RALPH GANO MILLER, A PROFESSIONAL LAW CORPORATION, A CALIFORNIA CORPORATION (FORMERLY MILLER & KEARNEY), PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9631–78R.     Filed March 17, 1981.

*Steven K. Ewald* and *Robert K. Butterfield,* for the petitioner.
*Claudia Jane Kelly,* for the respondent.

## OPINION

STERRETT, *Judge*: This is an action for declaratory judgment brought by petitioner Ralph Gano Miller, a Professional Law Corporation (formerly Miller & Kearney), pursuant to section 7476, I.R.C. 1954. Respondent has determined that Ralph Gano Miller, a Professional Law Corporation Stock Bonus Plan and Trust (formerly Miller & Kearney Stock Bonus Plan and Trust) failed to qualify as a stock bonus plan under the requirements of section 401(a) during the taxable year ending February 28, 1977. The only issue before this Court is whether respondent's determination is erroneous.

This case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure, by joint motion of the parties. The administrative record, submitted to this Court under Rule 217(b)(1), Tax Court Rules of Practice and Procedure, is incorporated herein by this reference. The facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. The following facts relevant to our decision are drawn from the administrative record.

Petitioner is a professional corporation organized under the laws of the State of California. Petitioner's principal place of business was in San Diego, Calif., at the time the petition herein was filed.

Petitioner adopted the Miller & Kearney Stock Bonus Plan and Trust on September 27, 1976.[1] On November 22, 1976, petitioner submitted this plan to the District Director of Internal Revenue, Los Angeles Office, and requested an advance determination that the plan met the requirements of qualification under section 401(a). On May 11, 1977, petitioner submitted a proposed amendment to the plan in an attempt to eliminate issues relating to the form and content of the plan as initially submitted.

On June 14, 1977, the District Director of Internal Revenue, Los Angeles Office, issued a proposed adverse determination that the plan did not meet the requirements of section 401(a). On July 5, 1977, petitioner appealed the proposed adverse determination to respondent's Regional Office. On September 15, 1977, the Assistant Regional Commissioner upheld the determination of the District Director.

On September 26, 1977, petitioner appealed the action of the Assistant Regional Commissioner to the National Office of respondent. By letter dated January 19, 1978, the National Office notified petitioner that it refused to consider petitioner's appeal.

Petitioner amended the plan, now known as the Ralph Gano Miller, a Professional Law Corporation Stock Bonus Plan and Trust, on October 17, 1977.

On May 30, 1978, respondent issued a final adverse determination letter to petitioner. Having complied with all of the requirements of section 7476(b), petitioner filed this petition for declaratory judgment on August 16, 1978.

It appears to us that petitioner's overall scheme was to adopt a stock bonus plan in which the only participants would be licensed professional employees. In order to provide like benefits for the nonprofessional personnel, petitioner also contemplated adopting a profit-sharing plan. The only participants of the latter plan would be the nonprofessional personnel. There would be like contributions to both plans based upon qualified compensation.

Petitioner's stock bonus plan, as amended on October 17, 1977, provided as follows:

---

[1]This plan was entitled the "Third Amendment to the Miller & Kearney Stock Bonus Plan and Trust" which amended and restated petitioner's original plan in its entirety.

## III. PARTICIPATION AND SERVICE

3.1 Participation: An Employee shall commence participation in this Plan as follows:

A. An Employee as of the Effective Date who has both attained age 25 and completed not less than 1000 Hours of Service in a 12 consecutive month period, beginning on his employment commencement date, and ending prior to the Effective Date (provided said Employee is a licensed person under the provisions of Section 13406 of the California Corporation Code), shall become a Participant on the Effective Date.

B. The participation of any Employee eligible thereafter to become a Participant shall commence as of the earliest Entry Date as of which he had both attained age 25 and completed not less than 1000 Hours of Service in a 12 consecutive month period, beginning on his employment commencement date, and ending prior to said Entry Date (provided said Employee is a licensed person under the provisions of Section 13406 of the California Corporations Code).

*     *     *     *     *     *     *

## VI. BENEFITS

*     *     *     *     *     *     *

6.4 Payment of Benefits: Benefits payable from a Participant's Employer Contribution Account * * * shall be paid in Qualifying Employer Securities only. * * *

6.5 Designation of Beneficiary:

A. Each Participant from time to time may designate any person or persons (who may be designed [sic] contingently or successively and who may be an entity other than a natural person) as his Beneficiary or Beneficiaries to whom his Plan benefits are paid if he dies before receipt of all of such benefits. Each Beneficiary designation shall be in form prescribed by the Committee and will be effective only when filed with the Committee during the Participant's lifetime. Each Beneficiary designation filed with the Committee will cancel all Beneficiary designations previously filed with the Committee. The revocation of a Beneficiary designation, no matter how effected, shall not require the consent of any designated Beneficiary.

*     *     *     *     *     *     *

6.7 Limitations on Stock Payments to Non-Licensed Beneficiaries:

A. Notwithstanding anything to the contrary, no Qualifying Employer Securities shall be distributed to a Beneficiary who is not a licensed person under the provisions of Section 13406 of the California Corporations Code.

B. Such Beneficiary's benefits shall be distributed in cash, or other assets in kind, provided no discrimination in value results therefrom.

*     *     *     *     *     *     *

## XIII. TRUST AND TRUSTEE

*     *     *     *     *     *     *

13.11 Limitations on Appointment of Trustee: Notwithstanding anything in the foregoing, no action shall be taken to appoint any person as an additional Trustee or successor Trustee of the Plan unless such person is a licensed person

under the provisions of Section 13406 of the California Corporations Code and is a shareholder of the Employer.

Respondent concluded in his final adverse determination letter that this stock bonus plan did not meet the requirements of section 401(a) because under California law the related trust cannot hold stock in a professional corporation. On brief, respondent proposed the additional ground that this stock bonus plan cannot qualify under section 401(a) and the related regulations thereunder because benefits may be distributed in the form of property other than stock of the employer.

Respondent's additional ground implicitly raises an issue of first impression. Further, since this ground was not relied on by respondent in his adverse determination letter, he must, under our Rule 217(c)(1)(ii), bear the burden of proof with respect to it. The new argument by respondent is purely a legal one and all relevant facts are in the record for our analysis. Cf. *Estate of Horvath v. Commissioner*, 59 T.C. 551 (1973).

While we have considerable doubt about the merits of respondent's original position with respect to California law, we do hold that he has carried his burden with respect to his second argument.

In reaching this conclusion, we start with the statute at issue. Section 401(a) provides in pertinent part:

SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus * * * plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

We note that the meaning of the term "stock bonus plan" is not defined beyond the mere words themselves.

In this not unusual situation the respondent, in his regulations, sought to flesh out the bare bones of the statutory language. In section 1.401–1(b)(1)(iii), Income Tax Regs., he provided as follows:

(iii) A stock bonus plan is a plan established and maintained by an employer to provide benefits similar to those of a profit-sharing plan, except that the contributions by the employer are not necessarily dependent upon profits and *the benefits are distributable in stock of the employer company.* For the purpose of allocating and distributing the stock of the employer which is to be shared among his employees or their beneficiaries, such a plan is subject to the same requirements as a profit-sharing plan. [Emphasis added.]

It is now hornbook law, for reasons implicit in the citation, that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and * * * should not be overruled except for weighty reasons." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948).[2] Certainly the statutory phrase "stock bonus * * * plan of an employer" seems to suggest that the plan be established to provide stock of the employer to plan participants. Section 1.401–1(b)(1)(iii), Income Tax Regs., requires that stock bonus plan benefits be distributable in the form of stock of the employer. This is facially consistent with the statute, and a review of the historical origin of the language at issue does not suggest otherwise.

The special tax treatment accorded stock bonus plans was first introduced into the tax law by section 219(f), Revenue Act of 1921, ch. 136, 42 Stat. 247, which provided in pertinent part as follows:

(f) A trust created by an employer as a part of a stock bonus or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under this section, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. * * *

The act provided no statutory definition for the term "stock bonus plan," and the legislative history surrounding that act does not provide any guidance with respect to the purpose or meaning of that conceptually elusive creation of Congress.

The above formulation with some modification was incorporated into section 165, I.R.C. 1939. In section 162, Revenue Act of 1942, ch. 619, 56 Stat. 862, Congress amended section 165, I.R.C. 1939 (predecessor of section 401(a)), to provide in pertinent part as follows:

Sec. 165(a). EXEMPTION FROM TAX. —A trust forming part of a stock bonus

---

[2]Most recently Justice Powell, writing for a unanimous Court, stated that "These regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task 'of administering the tax laws of the Nation.' * * * We therefore must defer to Treasury Regulations that 'implement the congressional mandate in some reasonable manner.'" (Citations omitted.) *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. ___ (1981).

* * * plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

In amending section 165, I.R.C. 1939, Congress intended to reduce the use of employee benefit plans, including stock bonus plans, as a device for tax avoidance. Moreover, Congress was trying to combat, inter alia, the use of such plans to discriminate in favor of employees who were "officers, shareholders, supervisory employees, or highly compensated employees."[3]

In any event, even after the passage of the Revenue Act of 1942, the term "stock bonus plan" remained a formally undefined concept. However, in December 1943, the Treasury Department adopted regulations containing the definition of a "stock bonus plan" which, with insubstantial change, is now memorialized in section 1.401–1(b)(1)(iii), Income Tax Regs., the regulation under consideration.[4] The meager legislative history of section 401(a) does not suggest a definition of the term "stock bonus plan" contrary to that of section 1.401–1(b)(1)(iii), Income Tax Regs.[5] Accordingly, we conclude that the regulation is reasonable and consistent with the statute.

---

[3]H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 372, 413; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 541, 606–607. The specific changes made by Congress in 1942 to sec. 165, I.R.C. 1939, included the insertion of the words "or their beneficiaries" to conform the statute to the interpretation which had "for some time been placed on existing law" by the Treasury Department. S. Rept. 1631, *supra*, 1942–2 C.B. at 606. See also J. Drye, Jr., "Pension and Other Deferred Compensation Plans Under Section 162 of the Revenue Act of 1942," N.Y.U. 2d Inst. on Fed. Tax. 48, 50 (1943). Further, the words "some or all" were deleted from the Code to prevent discrimination in favor of certain high-level employees and shareholders. See L. Rice, Jr., "Employee Trusts Under the Revenue Act of 1942," 20 Taxes 721–722 (1942); J. Drye, Jr., *supra* at 50.

[4]Sec. 29.165–1(a), Regs. 111, which was adopted by respondent in T.D. 5422, 1944 C.B. 318, provided as follows:

"A stock bonus plan is a plan established and maintained by an employer to provide benefits similar to that of a profit-sharing plan except that the contributions by the employer are not necessarily dependent upon profits and the benefits are distributable in stock of the employer company. Such a plan, with respect to determining and distributing the stock of the employer which is to be shared among his employees or their beneficiaries, is subject to the same requirements as in the case of a profit-sharing plan. * * * "

[5]We have painstakingly reviewed numerous articles, treatises, and other literary works published during the last 40 years which deal with stock bonus plans, and, for what it is worth, these publications do not complain that sec. 1.401–1(b)(1)(iii), Income Tax Regs., is unreasonable or contrary to congressional intent. To the contrary, they appear to concede the reasonableness of the definition contained in that regulation. See R. Miller, Jr. & L. Williams, "Stock Bonus Plans Have Enhanced Utility in Light of the Pension Reform Laws," 42 J. Tax. 87–88 (1975); 4A J. Mertens, Law of Federal Income Taxation, sec. 25B.06, p. 24 (1979); C. Hinckley, "ESOP and ERISA: An Unhappy Marriage," 2 Pension and Profit Sharing Tax J.

A more difficult question, perhaps, relates to the administrative gloss that respondent has put on his own regulations. In Rev. Rul. 71–256, 1971–1 C.B. 118, respondent wrote that:

> In order for a plan to be a stock bonus plan, within the meaning of section 1.401–1(b)(1)(iii) of the regulations, *the entire distribution* (except for the value of a fractional part of a share) must be in stock of the employer corporation. * * * [Emphasis added.]

The above interpretation is relevant by reason of section 6.7, subparagraph B of the plan, which provides that benefits payable to a nonlicensed person "shall be distributed in cash, or other assets in kind." We must determine whether respondent's interpretation of the language of the subject regulation is proper, again, in light of legislative history and recent developments in the tax law.

We have noted that Congress, in 1942, expressed its displeasure with respect to the unintended utilization of qualified employee benefit plans, including stock bonus plans, as devices to discriminate against the general employee population. Requiring stock bonus plans to distribute benefits in the form of employer stock appears to be a reasonable means of avoiding the opportunity for manipulation or discrimination with respect to the distribution of plan benefits. Put more simply, the requirement to distribute benefits in the form of employer stock is the seal which makes the employee's benefit airtight. We therefore agree that the subject regulation may reasonably be interpreted to *require* that plan benefits be distributed in the form of employer stock.

Recently, in the Miscellaneous Revenue Act of 1980, Pub. L. 96–605, 94 Stat. 3521, Congress amended the Internal Revenue Code to add paragraph (23) to section 401(a). The new subsection provides as follows:

SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.
  (a) REQUIREMENTS FOR QUALIFICATION.— * * *

  *   *   *   *   *   *   *

  (23) A stock bonus plan which otherwise meets the requirements of this

---

271 (1976); S. Gewanter, "Factors To Consider in Selecting and Establishing Qualified Deferred Compensation Plans," Taxation of Deferred Employee and Executive Compensation 104, 123–124 (H. Sellin ed. 1960).

section shall not be considered to fail to meet the requirements of this section because it provides a cash distribution option to participants if that option meets the requirements of section 409A(h)(2).[6]

By enacting section 401(a)(23), Congress in effect legislatively modified section 1.401–1(b)(1)(iii), Income Tax Regs., for plan years beginning after December 31, 1980. What we consider helpful is the congressional committees' explanation of the law as it existed prior to section 401(a)(23) when they stated:

> Under present law, tax-qualified stock bonus plans must generally distribute stock to participants entitled to a distribution. However, a stock bonus plan which is either a tax credit employee stock ownership plan or an employee stock ownership plan may distribute cash, subject to a participant's right to demand that benefits be distributed in the form of employer securities.[7]

Congress recognized the validity of section 1.401–1(b)(1)(iii), Income Tax Regs.

Turning to the facts in the instant case, petitioner's stock bonus plan provided for distribution of benefits other than petitioner's stock where a "nonlicensed" beneficiary is involved. Therefore, petitioner's plan fails to meet the requirements of a qualified stock bonus plan as defined in section 1.401–1(b)(1)(iii), Income Tax Regs., because plan benefits may be distributed in the form of property other than petitioner's stock. Based on the foregoing discussion, we hold that the Ralph Gano Miller, a Professional Law Corporation Stock Bonus Plan and Trust, does not meet the requirements of section 401(a).

Accordingly, we need not consider the State law question.

*Decision will be entered for the respondent.*

---

[6]The purpose of sec. 401(a)(23) was to change prior law to allow stock bonus plans to be eligible for the same rules governing ESOPs with respect to cash and stock distributions. S. Rept. 96–1036 (1980), 1981–6 I.R.B. 41; H. Rept. 96–1278 (1980), 1981–6 I.R.B. 28. In sec. 141, Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, Congress enacted sec. 409A(h) which permitted distribution of property other than employer stock from a stock bonus plan that qualified as an ESOP only within the confines of specifically defined parameters. See sec. 409A(h).

[7]S. Rept. 96–1036 (1980), 1981–6 I.R.B. 41; H. Rept. 96–1278 (1980), 1981–6 I.R.B. 28.