DAVID A. SAMONDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Samonds v. Commissioner
Docket No. 3954-91
United States Tax Court
T.C. Memo 1993-329; 1993 Tax Ct. Memo LEXIS 331; 66 T.C.M. (CCH) 235; 17 Employee Benefits Cas. (BNA) 1131; July 26, 1993, Filed *331 Decision will be entered under Rule 155. For petitioner: Charles L. Steel, IV. For respondent: Edwina L. Charlemagne. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's 1987 Federal income tax in the amount of $ 46,206. The deficiency is attributable to respondent's determination that distributions made to petitioner from his former employer's profit sharing plan did not constitute a lump-sum distribution within the purview of section 1124 of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, 2475-2476, and hence did not qualify for 10-year forward averaging treatment (as claimed by petitioner). The sole issue for decision is the correctness of that determination. This case was submitted fully stipulated under Rule 122. [1] We incorporate by reference the stipulation of facts and attached exhibits. Petitioner resided in Kure Beach, North Carolina, at the time his petition was filed. *332 Petitioner was an employee and stockholder of U-Drive It, Inc. (the corporation). His employment was terminated on December 10, 1985, and on the same day he sold his stock to an unrelated third party. Petitioner had been a participant in the corporation's profit sharing plan since 1970. The profit sharing plan was one which qualified under section 401(a) and was tax exempt under section 501(a). Petitioner was required by the profit sharing plan and the Internal Revenue Code to incur a break-in-service year prior to withdrawing the balance to the credit of his account. The profit sharing plan defined a "break-in service year" as "any Trust Year during which an Employee is employed by the Employer for 500 Hours of Service or less". On January 13, 1987, petitioner received a distribution from the profit sharing plan in the amount of $ 87,335.27, representing the balance of his account as of December 31, 1985. On July 16, 1987, he received an additional distribution from the profit sharing plan in the amount of $ 15,027.26, representing the earnings on his December 31, 1985, account balance from January 1, 1986, through December 31, 1986, and reallocated forfeitures. Petitioner *333 was 41 at the time of the January 13, 1987, distribution, and 42 at the time of the July 16, 1987 distribution. On an amended return for 1986, petitioner made an election allowed by TRA section 1124 and reported as ordinary income the amounts he received in 1987 as distributions from the profit sharing plan. He reported the $ 102,363 ($ 87,335.27 + $ 15,027.26, rounded) as a lump-sum distribution and claimed that such distribution qualified for 10-year forward averaging treatment. The plan trustee provided petitioner with a Form 1099R for 1987 showing distribution payments in the aggregate amount of $ 102,362.53, taxable $ 25,590.63 as a capital gain and $ 76,771.90 as ordinary income. Respondent determined that the distributions from the profit sharing plan did not qualify for 10-year forward averaging treatment and, in the notice of deficiency, increased petitioner's capital gain income for 1987 by $ 25,591 and petitioner's ordinary income for 1987 by $ 76,772. As a result, respondent determined that petitioner is liable for a deficiency in income tax for 1987, including the additional tax on early distributions under section 72(t). The Tax Reform Act of 1986 eliminated 10-year *334 forward averaging treatment previously available for lump-sum distributions received under certain circumstances from retirement plans qualified under section 401. However, TRA section 1124 provided a transition rule which extended the availability of 10-year forward averaging treatment with respect to a lump-sum distribution or distributions received after December 31, 1986 and before March 16, 1987. [2] Initially, TRA section 1124 only applied in the case of employees whose separation from service occurred during 1986. (In the case of such an employee, if the employee received a lump-sum distribution before March 16, 1987, on account of the separation from service, then the employee could treat the lump-sum distribution as received in 1986.) However, the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, section 1011A(d), 102 Stat. 3342, 3476, made the aforesaid transition rule applicable in the case of an employee whose separation from service occurred at any time before 1987. [3] Thus, as a result of TRA section 1124(a) and TAMRA section 1011A(d), a taxpayer may use 10-year averaging for a lump-sum distribution made in 1987 if the following four requirements *335 are satisfied: (1) The taxpayer separated from service at any time before 1987; (2) the taxpayer received a lump-sum distribution under section 402(e)(4)(A); (3) such lump-sum distribution was received after December 31, 1986, and before March 16, 1987; and (4) the taxpayer elected to treat the distribution as if received when he separated from service. *336 Here, there is no dispute that petitioner separated from service before 1987 and that he elected to treat the distribution received as if it were received when he separated from service. Accordingly, the focus of our inquiry is whether the distribution received by petitioner was a lump-sum distribution under section 402(e)(4)(A), and if so whether all or a portion thereof was received by him after December 31, 1986 and before March 16, 1987. To qualify as a lump-sum distribution, the distribution, whether paid in a single sum or in installments, must be completed within 1 taxable year of the recipient. Sec. 402(e)(4)(A). Here, petitioner's separation from service (i.e., his termination of employment with the corporation) occurred on December 10, 1985. He received the first of two distributions from a qualified retirement plan with respect to his separation from service on January 13, 1987, and both distributions were completed within 1 calendar year. Respondent admits on brief that ordinarily the two distributions received by petitioner would qualify as a lump-sum distribution. However, respondent contends that for purposes of the TRA section 1124 transition rule, the 2-1/2-month *337 period between December 31, 1986, and March 16, 1987, is to be treated as 1 taxable year. Hence, respondent argues: "the distributions received by petitioner do not qualify as a lump-sum distribution since one of the distributions was made on July 16, 1987, after the window provided by the statute had closed". We do not find respondent's argument persuasive. Respondent's position is not supported by any of the commentary accompanying the Tax Reform Act of 1986 or the Technical and Miscellaneous Revenue Act of 1988. Rather, the genesis of respondent's position is from Notice 87-13, Q&A-24, 1987-1 C.B. 432, 443. As relevant to this case, the notice provides: This notice provides guidance, in the form of questions and answers, with respect to certain provisions of the Tax Reform Act of 1986 (TRA '86) * * * Until further guidance is published, the guidance provided by these questions and answers may be relied on by taxpayers to design and administer plans and to determine the tax treatment of plan contributions and distributions. The Service will apply the questions and answers in issuing determination letters, opinion letters, and other rulings and *338 in auditing returns with respect to taxpayers and plans. If future guidance is more restrictive than this notice, such guidance will be applied without retroactive effect. No inference should be drawn, however, regarding issues not addressed in this notice which may be suggested by a particular question and answer or as to why certain questions, and not others, are included. Retroactive protection will not necessarily be afforded with respect to any such inferred guidance. * * * * * * Q-24: To what extent may employees treat certain lump sum distributions received in 1987 as though they had been received in 1986? A-24: Section 1124 of TRA '86 provides a special rule under which certain lump sum distributions received after December 31, 1986 and before March 16, 1987 may be treated as having been received during 1986 for certain purposes. The special rule provides that if an employee separates from service for [sic] an employer during calendar year 1986 and receives a lump sum distribution (as defined in section 402(e)(4) of the Code) after December 31, 1986 and before March 16, 1987 pursuant to a plan maintained by such employer on account of such separation from service, *339 the employee may elect to treat the lump sum distribution as if it were received on the date that the employee separated from service. Such a 1987 lump sum distribution that an employee elects to treat as received on the date of the employee's 1986 separation from service is a "section 1124 lump sum distribution." For purposes of determining whether the distribution or distributions received by the employee constitute a lump sum distribution that satisfies the rules of section 402(e)(4) after December 31, 1986 and before March 16, 1987, such 2-1/2 month period is to be treated as one taxable year of the employee. Aside from this modification, the general rules applicable for determining whether a distribution is a lump sum distribution under section 402(e)(4) continue to apply. This means, for example, that the employee must receive the balance to the credit of the employee (calculated with application of section 402(e)(4)(C)) within this 2-1/2 month period, and no amount distributed during this 2-1/2 month period which is not an annuity contract may be treated as a lump sum distribution unless the taxpayer elects to have all such amounts received during such 2-1/2 month period *340 treated as a lump sum distribution. In addition, an election of lump sum treatment for distributions received in the 2-1/2 month period counts as an election made under section 402(e)(4)(B) after December 31, 1986. If a distribution or distributions received during the 2-1/2 month period qualify as a lump sum distribution under section 402(e)(4) as though such period is a full taxable year of the employee, for the employee's 1986 and 1987 taxable years, the employee may elect to treat such lump sum distribution as though it were received on the date the employee separated from service in 1986. Such an election must be made on a return (or amended return) filed by the employee for the employee's 1986 taxable year by the due date (with extensions) for the return for the 1987 tax year, by attaching a statement that such lump sum distribution is to be treated as a section 1124 lump sum distribution. If an employee elects to treat a lump sum distribution that is eligible for section 1124 treatment as a section 1124 lump sum distribution, for purposes of determining the tax treatment of such distribution, the distribution is to be treated as though it was the only distribution received *341 by the employee during 1986 from the plan (or plans) making the section 1124 lump sum distribution. Thus, for example, if the employee had actually received a distribution in 1986 and rolled over all or part of such distribution to an IRA, such distribution and rollover may be disregarded in determining the tax treatment of the section 1124 lump sum distribution. In addition, other amounts received in 1986 from the plan (or plans) making the section 1124 lump sum distribution may not be treated as part of the section 1124 lump sum distribution for purposes of determining the tax treatment of such distribution. However, if the employee actually received a separate lump sum distribution in the 1986 taxable year from a different plan (or plans), this separate lump sum distribution and the second 1124 lump sum distribution must be combined and treated as a single lump sum distribution received in 1986. A section 1124 lump sum distribution is to be treated as received in 1986 for purposes of the applicable income tax provisions (including, for example, the capital gains and averaging rules of section 402) and for purposes of the section 72(t) additional tax on early distributions and *342 the tax under section 4981 (as added by section 1134 of TRA '86) on excess annual distributions. In addition, a section 1124 lump sum distribution is to be treated as received in 1986 for purposes of determining the tax treatment of other distributions received in 1987. Nevertheless, for reporting and withholding purposes, a section 1124 lump sum distribution is to be treated as paid and received when it is actually paid and received in 1987. Thus, the distribution is to be reported on the Form 1099R for the 1987 tax year. In addition, if the employee does not elect out of withholding with respect to a section 1124 lump sum distribution, the amount to be withheld under section 3405 is to be calculated by reference to the tables applicable for 1987, and any amounts withheld from such lump sum distribution will be credited to the employee's 1987 taxable year, rather than the employee's 1986 taxable year. * * *
Notice 87-13, supra, is an administrative pronouncement which like a revenue ruling or revenue procedure does not constitute authority for deciding a case in this Court. Cf. Follender v. Commissioner, 89 T.C. 943, 958 (1987); Stark v. Commissioner, 86 T.C. 243, 250-251 (1986); *343 Virginia Education Fund v. Commissioner, 85 T.C. 743, 751 (1985), affd. 799 F.2d 903 (4th Cir. 1986). Notice 87-13, supra, has been disregarded on other grounds by this Court and by the Fifth Circuit Court of Appeals in an unpublished opinion. Grumbles v. Commissioner,     F.2d     (5th Cir., June 30, 1993), revg. T.C. Memo. 1992-489; Merritt v. Commissioner, T.C. Memo. 1992-443; Younger v. Commissioner, T.C. Memo. 1992-387. Classifying, as respondent insists, the 2-1/2-month period from December 31, 1986, to March 16, 1987, as "one taxable year" is, in our opinion, improper. For purposes of TRA section 1124, the term "lump-sum distribution" has the same meaning as found in section 402(e)(4)(A). And, for purposes of section 402(e)(4)(A), all distributions completed within 1 taxable year of the recipient (which in this case would be calendar year 1987) qualify as a lump-sum distribution. Thus, we reject respondent's claim that to qualify for 10-year forward averaging treatment, all distributions had to be received by *344 petitioner within the December 31, 1986, to March 16, 1987, time-frame. Respondent also argues that petitioner did not receive the entire balance of his account within 1 taxable year. Respondent posits that the $ 87,335.27 payment received on January 13, 1987, did not represent the entire balance due petitioner because his account had been credited in 1986 with the amount of $ 15,027.26, representing the earnings on his account from January 1, 1986, to December 31, 1986. Again, we find respondent's argument unpersuasive. The plan trustee had not yet computed nor credited the 1986 earnings or any reallocated forfeitures to petitioner as of January 13, 1987. The amount received by petitioner on January 13, 1987, represented the amount computed as of that date; the amount paid petitioner on July 16, 1987, represented a subsequently computed and credited amount. To summarize, to the extent Notice 87-13, 1987-1 C.B. 432, requires that the 2-1/2-month period from December 31, 1986, to March 16, 1987, is to be treated as 1 taxable year of the employee, it is inconsistent with section 402(e)(4)(A), and hence we reject it. We hold that the $ 87,335.27 *345 paid to petitioner on January 13, 1987, qualifies for 10-year forward averaging treatment. We further hold that the July 16, 1987 payment was received beyond the March 16, 1987, "window" provided for by the transition rule, and hence it does not qualify for 10-year forward averaging treatment. In so holding, we recognize that we are dealing with a transitional provision of limited applicability and with a relief provision which should be liberally construed. Cf. Estate of Morris v. Commissioner, 55 T.C. 636, 642 (1971), affd. per curiam 454 F.2d 208 (4th Cir. 1972). As a final matter we examine whether petitioner is liable for the additional tax on early distributions under section 72(t). [4]Section 72(t) became effective for taxable years beginning after 1986. TRA sec. 1123(e)(1), 100 Stat. 2475. Since under TRA section 1124(a) and TAMRA section 1011A(d) petitioner properly elected to treat the $ 87,335.27 received on January 13, 1987, as if it were received when he separated from service in 1985, section 72(t) does not apply to such distribution. See Grumbles v. Commissioner, supra. However, such is not the *346 case with respect to the $ 15,027.26 distribution received on July 16, 1987, at which time section 72(t) was effective. Petitioner failed to establish that such distribution falls within any of the statutory exemptions found in section 72(t)(2); accordingly, section 72(t) applies to the $ 15,027.26 distribution. To reflect the foregoing holdings, Decision will be entered under Rule 155. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code for the tax year at issue.↩
2. The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1124, 100 Stat. 2085, 2475, provides: (a) In General. If an employee separates from service during 1986 and receives a lump sum distribution (within the meaning of Section 402(e)(4)(A)↩ of such Code) after December 31, 1986, and before March 16, 1987, on account of said separation from service, then, for purposes of the Internal Revenue Code of 1986, such employee may elect to treat such lump sum distribution as if it were received when such employee separated from service.
3. The Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1011A(d), 102 Stat. 3342, 3776, provides: (a) In General. -- If an employee dies, separates from service, or becomes disabled before 1987 and an individual, trust, or estate receives a lump sum distribution with respect to such employee after December 31, 1986, and before March 16, 1987, on account of such death, separation from service or disability, then, for purposes of the Internal Revenue Code of 1986, such individual, estate, or trust may treat such distribution as if it were received in 1986.↩
4. Sec. 72(t) provides as follows: SEC. 72(t) 10-Percent Additional Tax On Early Distributions From Qualified Retirement Plans -- (1) Imposition Of Additional Tax. -- If any taxpayer receives any amount from a qualified retirement plan * * * the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includable in gross income.↩